IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DENZELL JENKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 23-00062-JB-N |
| | ) |
| CITY OF JACKSON, ALABAMA, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on Defendant Marlon Brown's ("Defendant Brown") Motion for Summary Judgment. (Doc. 32). Plaintiff Denzell Jenkins ("Plaintiff") filed a Response in Opposition (Doc. 35) and Defendant Brown filed a Reply. (Doc. 41). The Court conducted a hearing on May 22, 2023, at which counsel for Plaintiff and Defendant Brown appeared and argued. Upon due consideration of the filings and the oral arguments of the parties, the Court **GRANTS** Defendant Brown's Motion for Summary Judgment.

**I.    UNDISPUTED FACTS**[1]

In the late evening of Friday, July 29, 2022, Plaintiff walked into the Little Cajun Grill in downtown Jackson, Alabama. Defendant Brandon Blaze Everette ("Defendant Everette") was present at the Little Cajun Grill. While Plaintiff was waiting at the bar, Defendant Everette approached Plaintiff and started asking him some questions. Plaintiff and Defendant Everette briefly engaged in small talk until suddenly, Defendant Everette swung and hit Plaintiff. Plaintiff claimed

---

[1] Plaintiff did not dispute the facts set out in Defendant Brown's Motion for Summary Judgment, therefore those facts are accepted as undisputed by the Court. The Court relies upon Defendant Brown's record citations in this Order.

1

that he was struck with such a force that his body was knocked over a table and his shoulder was dislocated. Plaintiff then quickly tried to get up in an attempt to fight back. Before he could, the restaurant manager got in between Plaintiff and Defendant Everette and forced them outside.

Meanwhile, Defendant Brown, a Patrol Officer for the City of Jackson Police Department, responded to a radio call about a possible fight at the Little Cajun Grill.[2] Defendant Brown's bodycam video recorded the entire encounter. The video shows that at approximately 10:25 pm Defendant Brown arrived and encountered several people standing around in front of the restaurant. As Defendant Brown approached the restaurant, Plaintiff had his shirt off. Defendant Brown asked Plaintiff what was going on and Plaintiff stated "I don't want any charges filed. I just want to go one-on-one with that dude" as he pointed toward the front door. Plaintiff then walked toward the front door and attempted to swing with his right arm at Defendant Everette who was coming out of the door. Plaintiff's right hook completely missed Defendant Everette.

Defendant Brown approached Plaintiff seconds after watching him swing at Defendant Everette. Defendant Brown drew his taser in an effort to get Plaintiff to calm down and to stop trying to fight Defendant Everette. Defendant Brown applied the taser one time in the "touch-stun"[3] mode in the right side of Plaintiff's right ribcage. The timestamp on the bodycam video shows that

---

[2] Defendant Brown started his career in law enforcement with the Camden Police Department. He attended the Police Academy in Selma, Alabama. He worked for the Camden Police Department for approximately two years before becoming a Deputy with the Wilcox County Sherriff's Department. He worked in this position for approximately two and a half years and then became a patrol officer with the City of Jackson.

[3] A taser can be used in two different ways. The first method is the touch-stun or drive-stun mode. In the touch-stun mode, the prongs of the taser are placed against the body of an individual and the trigger on the taser is pulled to engage the device. This touch-stun mode is used as a pain compliance technique to gain compliance from individuals during an encounter with law enforcement. The other method for using a taser involves shooting the two darts from the end of the taser, with wires attached, into an individual in an effort to gain control of that individual. This method of taser use by shooting the darts causes muscle contraction and pain, which is different than the touch-stun mode. There is no dispute that Defendant Brown used the touch-stun mode on Plaintiff on July 29, 2022.

Defendant Brown touched Plaintiff with the taser for approximately one second.  Plaintiff complied and backed away.

Defendant Brown then spoke with the restaurant manager and learned that Defendant Everette started the fight by hitting Plaintiff while they were both inside the restaurant.  Officer Brown then arrested Defendant Everette.

Defendant Brown also reviewed the security video in the back office of the restaurant.  The video confirmed Defendant Everette had punched Plaintiff inside the restaurant prior to Defendant Brown's arrival.  Defendant Brown transported Defendant Everette to the City of Jackson Police Department where he was booked into the jail on an assault charge.  Although Defendant Brown could have arrested Plaintiff for attempted assault or for disorderly conduct under Alabama Code, § 13A-11-7, he ultimately exercised his discretion to only arrest Defendant Everette because his investigation revealed Defendant Everette was the initial aggressor.

## II.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250 (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial."  *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 870 (11th Cir. June 24, 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole."

*Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

### III.  ANALYSIS

Plaintiff asserts claims for excessive force under 42 U.S.C. § 1983 as well as a state law assault and battery claim against Defendant Brown.  Defendant Brown contends Plaintiff is unable to establish any claim against him under 42 U.S.C. § 1983.  Defendant Brown also maintains Plaintiff cannot make a *prima facie* case of assault and battery claim under Alabama law.  As to both claims, Defendant Brown takes the position that even if Plaintiff could establish a claim, he would ultimately be entitled to both qualified immunity and law enforcement immunity and/or state-agent immunity on the respective claims.[4]

In response to the Motion for Summary Judgment Plaintiff does not dispute the facts and maintains the pertinent questions for the Court are whether Defendant Brown's use of force was reasonable and whether the taser employed by Defendant Brown constituted deadly or excessive force.  Plaintiff's opposition brief does not meaningfully challenge Defendant Brown's argument that, as a matter of law, he is entitled to qualified immunity.  Plaintiff cites to no decision of the Alabama Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the United States

---

[4] In response to Defendant Brown's motion for summary judgment, Plaintiff made no arguments against summary judgment with respect to the state law claims or Defendant Brown's entitlement to law enforcement immunity and/or state-agent immunity. (*See* Doc. 35). Plaintiff is therefore deemed to have abandoned the state law claims contained within Count II. *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (finding that a party's failure to brief and argue an issue before the district court is grounds for declaring it abandoned); *see also Zivojinovich v. Barber*, 525 F.3d 1059, 1062 n. 1 (11th Cir. 2008); *Faught v. American Home Shield Corp.*, 2010 U.S. Dist. LEXIS 146383, *19 - 20 (N.D. Ala. July 21, 2010).

Supreme Court establishing that, given the undisputed facts of this case, Defendant Brown violated Plaintiff's clearly established rights.

The undisputed facts here support Defendant's position that he responded to a tense and rapidly evolving situation between two aggressive suspects. Defendant Brown deployed his taser for a brief instant to stop what he reasonably understood to be a potentially dangerous assault and battery. Defendant Brown applied objectively reasonable force in order to break up the fight and gain control of the situation so he could complete his investigation. Plaintiff has cited to no case refuting Defendant Brown's entitlement to qualified immunity.

### IV.  CONCLUSION

Officer Brown is entitled to qualified immunity and judgment in his favor as a matter of law on the Plaintiff's excessive force claim. First, it is undisputed that Officer Brown was acting within his discretionary authority. Second, the undisputed facts make it clear Defendant Brown did not violate Plaintiff's federally protected rights. Finally, even if the undisputed facts could support a violation of Plaintiff's rights, no clearly established law gave Defendant Brown fair warning that his conduct was illegal. Defendant Brown's Motion for Summary Judgment is therefore **GRANTED**.

**DONE and ORDERED** this 3rd day of June, 2024.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE